**Wilbur Newton DAVIS, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 8031.**

United States Court of Appeals
Fourth Circuit.

Argued March 15, 1960.

Decided June 6, 1960.

R. R. Ryder, Richmond, Va., for appellant.

Shanley Keeter, Asst. U. S. Atty., Richmond, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Convicted of conspiracy to violate the narcotics laws, the defendant on appeal raises a multitude of hypertechnical objections.

While the indictment clearly charges a conspiracy to traffic in heroin, Davis contends the indictment is invalid because it charges that the offenses contemplated by the conspiracy were in violation of the Act of December 17, 1914, "commonly known as the Harrison Narcotic Act, and Acts amendatory thereof * * *." Davis says the Internal Revenue Code of 1939 [1] repealed the Harrison Act and was not an amendment of the earlier statute. He points to Section 4 of that Act [2] which provides:

"§ 4. Repeal and savings provisions. (a) The Internal Revenue Title, as hereinafter set forth, is intended to include all general laws of the United States and parts of such laws, relating exclusively to internal revenue, in force on the 2d day of January 1939 (1) of a permanent nature and (2) of a temporary nature if embraced in said Internal Revenue Title. In furtherance of that purpose, all such laws and parts of laws codified herein, to the extent they relate exclusively to internal

1. 53 Stat. 1 et seq.

2. 53 Stat. 1, § 4, 26 U.S.C.A. (I.R.C. 1939) note preceding section 1.

revenue, are repealed, effective, except as provided in section 5, on the day following the date of the enactment of this act."

■ If the Revenue Act of 1939 be regarded as a technical repeal and re-enactment, in modified form, of the Harrison Narcotic Act, as theretofore amended,* it avails the defendant nothing. In keeping with the spirit, at least, of Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S·C.A., it was appropriate to cite the statute which makes unlawful the conduct in which, it is charged, the conspirators planned to engage. The rule expressly provides, however, that error in the citation, or its entire omission, does not vitiate the indictment unless the error or omission has misled the defendant to his prejudice. There was no showing here that the defendant, or his counsel, was in any way misled, much less prejudiced, by the reference to the Harrison Act, rather than to the appropriate sections of the current code.

■ A similar contention is based upon the citation, following the conspiracy count, of the general conspiracy section, 18 U.S.C.A. § 371. This is, of course, a miscitation, for the more specific statute dealing with narcotic offenses, 26 U.S.C.A. § 7237, is controlling.

■■ Nor does this miscitation make illegal the sentence imposed though it exceeds the maximum permissible under 18 U.S.C.A. § 371. Congress, when it enlarged the penalties, and prescribed minimum prison terms, for narcotic offenses, issued a command which is binding upon the courts. The District Court was bound to impose sentence under 26 U.S.C.A. § 7237, rather than under 18 U.S.C.A. § 371, and the resulting sentence is not illegal.[3] The defendant would be entitled to a new trial, of course, if he could show that the miscitation had misled him to his prejudice, but he does not do that.

The conspiracy count charges as overt act No. 5 the sale by one Kenny of four capsules containing heroin and as overt act No. 13 the sale by one Johnson of ten capsules containing heroin. These sales were also the basis of substantive counts against Kenny and Johnson in which the four capsules are alleged to contain 6.8 grains of heroin and the ten capsules, 13 grains. The Government's evidence makes it clear that the weights charged in the substantive counts are those of the total contents of the capsules, not those of the heroin component.

■ If this be a variance from the substantive counts, upon which this defendant was not convicted, it is hardly a variance from the conspiracy count upon which he was convicted. The defendant was not misled, and the allegations of the conspiracy count, supplemented by the testimony,[4] are quite clear enough to protect the defendant against a subsequent indictment for the same offense.

■ Davis contends the evidence shows a series of disconnected sales rather than a conspiracy. The testimony shows, however, that at least one of the conspirators, Kenny, was a "pusher" and Davis, the appealing defendant, his source of supply. Davis would deliver narcotics to Kenny on consignment with the understanding that after Kenny had sold them for $2.50 per capsule, he would pay Davis at the rate of $1.50 per capsule. This continuing understanding and arrangement was a conspiracy, not a series of disconnected sales.[5]

The defendant seems to complain that all of the individuals charged with the conspiracy were not convicted. One Johnson, who, at the request of Davis, delivered a package containing narcotics and collected the purchase price, was acquitted upon the ground the proof did not show he knew the contents of the package and the nature of the transac-

---

*26 U.S.C.A. §§ 2550 et seq., 3220 et seq.

3. United States v. McKnight, 2 Cir., 253 F.2d 817; Georges v. United States, 5 Cir., 262 F.2d 426.

4. Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583.

5. Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674.

tion. Another, Coles, who sold fifty capsules as narcotics and collected an appropriate price, was acquitted upon the ground that the capsules contained no narcotic drug.

There has never been a rule, however, that some of the individuals named in a conspiracy indictment may not be convicted if others are acquitted. So long as the proof supports the finding that the convicted defendants did conspire together, it matters not that the proof failed to connect other jointly indicted individuals with the proven conspiracy.

Finally, complaint is made that an undercover agent was permitted to testify about a telephone conversation he had with Davis, who was not then personally known to him. This conversation is connected to Davis by much more than his telephonic announcement of himself. The testimony shows that shortly after the conversation, Davis requested Johnson to deliver a package to a man, whom he would meet at a designated time and place, and collect a certain sum of money. Both Johnson and the agent testified that the delivery and collection were accomplished and the agent testified it was in accordance with the arrangements he had made with Davis during the telephone conversation. Furthermore, on a later occasion the agent again spoke to Davis on the telephone when a second officer, with Davis, could positively identify Davis as the speaker. The first agent testified he recognized the voice he heard during the second conversation as that of the man with whom he spoke during the first.

We have examined the record and find no prejudicial error. If greater care had been exercised in the preparation of the indictment, most of the questions raised here would have been avoided and the time of the parties and of the courts would have been conserved. As an example of professional work, we may criticize it, but its deficiencies did not mislead or prejudice the defendant.

Affirmed.